**Harry C. CRAWFORD,
Appellant (Defendant),**

v.

**Faye L. CRAWFORD,
Appellee (Plaintiff).**

**Faye L. CRAWFORD,
Appellant (Plaintiff),**

v.

**Harry C. CRAWFORD, Appellee
(Defendant).**

Nos. 88–9, 88–10.

Supreme Court of Wyoming.

July 7, 1988.

Roberta A. Coates and Richard Wolf, Cheyenne, for Faye L. Crawford.

Bernard E. Cole and Donald A. Cole, Cheyenne, for Harry C. Crawford.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY, JJ., and BROWN, J. (Retired).

BROWN, Justice.[1]

In these consolidated appeals Harry C. Crawford (Harry) appeals from a portion of a judgment of the district court, dated November 23, 1987, ordering him to pay $12,000 to his ex-wife to satisfy his obligations under a property settlement agreement incorporated into a divorce decree filed on August 23, 1985. Faye L. Crawford (Faye) cross-appeals from the portion of the same judgment denying her motion for relief from judgment pursuant to Rule 60(b)(3), Wyoming Rules of Civil Procedure, concerning the setting aside of a transfer of a warehouse shelter stock based on alleged fraudulent misrepresentation as to its value.

As to the $12,000 order, Harry states the issue as:

"Did the District Court err in holding that the parties who executed a Property Settlement Agreement intended for [Faye] to receive a sum certain out of a fixed pool of assets despite [Faye's] reduction of the designated assets prior to execution of the agreement?"

Concerning the denial of her motion, Faye inquires:

"Whether a Judgment and Decree of Divorce incorporating a Property Settlement Agreement, which Property Settlement Agreement was based upon misrepresentations of one party to another during the negotiation of that Property Settlement Agreement, should be modified."

The portion of the judgment ordering Harry to pay $12,000 to Faye is reversed. The portion of the judgment denying Faye's motion is affirmed.

On November 19, 1984, Faye filed a complaint for divorce in the First Judicial District. Harry filed an answer and counterclaim on November 30, 1984. Before a scheduled trial, the parties entered into a property settlement agreement (agreement), dated June 20, 1985, which was approved by the court and incorporated into the judgment and decree of divorce filed August 23, 1985. The agreement, drafted by Faye and her attorney, essentially provided for an approximately equal distribution of the marital assets. Pertinent portions of the agreement provide as follows:

"1.  *Property Settlement*

"a.  The Wife shall receive as her sole and separate property, all the following assets:

"* * *

"8.  Cash interest in the following totaling $41,000.00

| | |
|---|---|
| "AG Edwards | $25,000 |
| "Municipal Bonds | 15,000 |
| "Bonds—safety deposit | 10,000 |
| "Capitol savings | 10,000 |
| "CD's (United) | 7,000 |
| "Cash—checking | 8,000 |

"* * *

"b.  The Husband shall receive as his sole and separate property, all of the following assets:

"* * *

"5.  Balance of cash interest in the following after distribution pursuant to paragraph eight (8) above.

| | |
|---|---|
| "AG Edwards | $25,000 |
| "Municipal Bonds | 15,000 |
| "Bonds—safety deposit | 10,000 |
| "Capitol savings | 10,000 |
| "CD's (United) | 7,000 |
| "Cash—checking | 8,000" |

The agreement also provided for the transfer to Faye of full right, title and interest

**1.** Chief Justice, Retired, June 30, 1988.

in a warehouse shelter stock, estimated by Harry, in a proposed distribution of assets, to have the value of $26,000.

A year later, on August 21, 1986, Faye filed a motion for relief from judgment aimed at modifying or clarifying the divorce decree or alternatively, setting aside the decree altogether pursuant to Rule 60, W.R.C.P. In support of her motion, Faye alleged that Harry, in the proposed distribution of assets, had fraudulently misrepresented the value of the warehouse shelter stock transferred to her pursuant to the agreement, and that she, therefore, received less than she had negotiated for.

A hearing was held on Faye's motion on October 22, 1987. Faye testified that she had received the $15,000 in municipal bonds and a $14,000 check from Harry, totaling $29,000 towards her interest in the $41,000. She also testified that she had already spent the $10,000 listed under the notation "Capitol Savings" in paragraph a.8, and the $7,000 listed under "CD's (United)," before the execution of the agreement in order to support herself while the divorce was pending. While she agreed that her share of the $41,000 was to be distributed from the listed assets specified in paragraph a.8 of the agreement, she disagreed that the $17,000 she had already spent comprised part of that amount.

Harry testified that at the time the parties executed the agreement, he understood that all the assets listed within the disputed paragraph were still in existence and were to make up the entire pool of assets from which Faye was to receive the $41,000. Harry never received notice from Faye or her attorney that $17,000 of the assets they had listed in paragraph a.8 no longer existed on the date the agreement was executed. Harry stated that he gave Faye $14,000 from "AG Edwards," and that Faye had $10,000 worth of bonds within a safety deposit box, $10,000 worth of sav-

ings, and the $7,000 listed as "CD's." Harry contended, therefore, that Faye had received her full $41,000 share of the $75,000 listed in paragraph a.8.

The trial court disagreed with Harry's contention and found that Faye had received only $29,000 of the $41,000 and was, consequently, entitled to an additional $12,000 under the agreement. The trial court concluded that the assets liquidated by Faye amounted to temporary support while the divorce was pending and that she was entitled to the $41,000 as of the date the agreement was executed.[2] The court further found that no fraud had been perpetrated by Harry in the valuation of the warehouse shelter stock transferred to Faye pursuant to the agreement, and thereby denied Faye's motion to have the transfer set aside under Rule 60(b)(3), W.R.C.P.

Harry's appeal from the portion of the judgment ordering him to pay Faye $12,000 was docketed as No. 88–9. Faye's appeal from the portion of the judgment denying her motion to have the transfer of the warehouse shelter stock set aside was docketed as No. 88–10. These cases are consolidated in this appeal.

I

Faye argues that the $41,000 she is to receive pursuant to the agreement is merely a cash amount to be transferred to her upon divorce exclusive of the $17,000 she already spent. While she agrees that the $41,000 is to come from those assets listed in paragraph a.8, she contends that the $17,000 she spent before execution of the agreement amounted to temporary support while the divorce was pending. The trial court agreed with her. We disagree. To adopt Faye's interpretation would require locating another source within the entire marital estate from which the $12,000 allegedly owed to Faye would come,

2. Faye filed a Motion for Temporary Support During Pendency for Action on April 26, 1985. However, because the parties entered into the property settlement agreement on June 20, 1985, this motion was never heard and a determination at that time as to a possible award of temporary support was never determined.

Nonetheless, at the hearing on Faye's motion for relief from judgment on October 22, 1987, the district court ruled that the assets utilized by Faye during the pendency of the divorce constituted temporary support. See discussion of the effects of the court's ruling in the text under heading I.

rather than limiting payment from the assets listed in paragraph a.8.

Our main purpose in the construction or interpretation of contracts or agreements is to determine the intention and understanding of the parties. *Wolff v. Belco Development Corporation,* Wyo., 736 P.2d 730, 732 (1987). The intent of the parties to a clear and unambiguous written agreement will be derived from the words of the entire agreement and determined by the court as a matter of law. *State Farm Fire and Casualty Company v. Paulson,* Wyo., 756 P.2d 764, 766 (1988); *Tibbets v. P & M Petroleum Co.,* Wyo., 744 P.2d 651, 652–653 (1987); *Nelson v. Nelson,* Wyo., 740 P.2d 939, 940 (1987); and *Wangler v. Federer,* Wyo., 714 P.2d 1209, 1217 (1986). We will not use extrinsic evidence to contradict the plain meaning of a clear and unambiguous written agreement, *Nelson v. Nelson,* supra, at 940; *Rouse v. Munroe,* Wyo., 658 P.2d 74, 78 (1983), nor will we rewrite a clear and unambiguous agreement under the guise of interpretation. *Arnold v. Mountain West Farm Bureau Mutual Insurance Company,* Wyo., 707 P.2d 161, 166 (1985).

With these principles in mind we look to the language of the agreement, specifically, paragraphs a.8 and b.5, state:

"a.  The Wife shall receive as her *sole* and *separate* property, all the following assets:

"* * *

"8.  Cash interest *in the following* totaling $41,000.00

| | |
|---|---|
| "AG Edwards | $25,000 |
| "Municipal Bonds | 15,000 |
| "Bonds—safety deposit | 10,000 |
| "Capitol savings | 10,000 |
| "CD's (United) | 7,000 |
| "Cash—checking | 8,000 |

"* * *

"b. The Husband shall receive as his sole and separate property, all of the following assets:

"* * *

"5.  *Balance* of cash interest in the following after distribution pursuant to paragraph eight (8) above.

| | | |
|---|---|---|
| "AG Edwards | $25,000 | |
| "Municipal Bonds | 15,000 | |
| "Bonds—safety deposit | 10,000 | |
| "Capitol savings | 10,000 | |
| "CD's (United) | 7,000 | |
| "Cash—checking | 8,000 | " |

This language is clear and unambiguous. Curiously, both Faye and Harry agree with this conclusion. Paragraph a.8 of the agreement lists $75,000 in assets. Each asset listed is individually named with a specified valuation attached thereto. The plain language of the agreement provides that Faye is to receive $41,000 cash interest in those assets listed in paragraph a.8, with Harry to receive the balance pursuant to paragraph b.5. The intent of the parties, based on that language, is that the $41,000 is to come from the pool of assets listed in paragraph a.8 only, and not from the entire marital estate. This is the only construction that the agreement could logically have and the only one the parties could have intended.

It is further uncontroverted that Faye and her attorney drafted the agreement, and that they did not inform Harry that Faye had spent the $17,000 before the agreement was executed. A contract should be construed most strongly against the party who drafted it. *Kelliher v. Herman,* Wyo., 701 P.2d 1157, 1159, n. 1 (1985).

The list in paragraph a.8 constitutes the entire pool of assets from which Faye's $41,000 share is to be derived. There is no other pool of assets from which this money could be transferred. That Faye liquidated the assets listed under the notations "CD's" and "savings," and thereby reduced the total value of the list of assets in paragraph a.8 from $75,000 to a sum $17,000 short of that, is immaterial and extrinsic evidence contradictory to the clear meaning of the agreement; it does not mean that Faye should be able to receive the $12,000 from another source. The intention of the parties was clearly to give Faye $41,000 from the pool of *assets listed in paragraph a.8.*

This is also true in light of the entire agreement. The agreement divided the entire marital estate. Thus, realistically, no

other source within the marital estate exists from which the money could be derived without destroying that other source and thwarting the clear intent of that pertinent provision.

We hold that the agreement executed by Faye and Harry, and incorporated into the judgment and decree of divorce, evidences a binding and valid written agreement concerning the valuation and transfer of the various assets in dispute. That agreement is clear and unambiguous as written, and evidences intent to take the $41,000 from the pool of assets specifically listed in paragraph a.8 only. The trial court's ruling that the $17,000 spent by Faye before execution of the agreement amounted to temporary support during the pendency of the divorce is unfounded. Faye filed a motion for temporary support on April 26, 1985, but because the parties entered into the agreement, the motion was never heard. It was improper for the district court to rule that the money spent by Faye amounted to temporary support when Harry was not afforded an opportunity to be heard and cross-examined on this issue. The effect of the court's ruling was to open up the agreement and circumvent the intent of the parties clearly expressed in its language. The trial court abused its discretion by ignoring the plain and unambiguous language of the property settlement agreement.

## II

In case No. 88-10, Faye contends that the judgment and decree of divorce should be modified pursuant to Rule 60(b)(3), W.R.C.P., in a manner that would set aside the transfer of the warehouse shelter stock to her under the agreement. Faye alleged that Harry fraudulently misrepresented the value of the stock in his proposed distribution of assets relied upon by her in negotiating and drafting the agreement ultimately incorporated into the judgment and decree of divorce. Harry had listed the value of the warehouse shelter stock at $26,000 in the proposed distribution. Upon sale, however, Faye only received $14,000 for the stock. The trial court disagreed with Faye's characterization of the transaction and denied her motion to have the transfer set aside under Rule 60(b)(3), W.R.C.P.

Rule 60(b)(3), W.R.C.P. provides for relief from a final judgment or proceeding for " * * * fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party * * *." Our standard in reviewing an attack on a judgment pursuant to Rule 60(b) is well settled:

" * * * Since the granting of relief pursuant to that rule is a matter of the exercise of the discretion by the trial court, on review the appellate court is limited to the question of whether there has occurred an abuse of the trial court's discretion. It was the Appellant's burden before the trial court to bring her cause within the claimed grounds for relief and to substantiate by adequate proof the grounds that she claimed for relief. The rule applies to special situations justifying extraordinary relief, but a showing of such exceptional circumstances should be made. A reversal of an order denying relief under Rule 60(b) will be ordered only if the trial court was clearly wrong." *McBride v. McBride,* Wyo., 598 P.2d 814, 816 (1979).

See also *Kreuter v. Kreuter,* Wyo., 728 P.2d 1129, 1132 (1986).

Moreover,

"[w]here fraud and misrepresentation is relied upon as a ground for relief sought pursuant to a Rule 60(b) motion, it must be proved by clear and convincing evidence. Fraud is never presumed, and the burden of proof to clearly establish such fraud or misrepresentation is upon the party seeking relief. *McBride v. McBride,* supra, 11 Wright and Miller, Federal Practice and Procedure: Civil § 2860, pp. 188-189." *Stevens v. Murphy,* Wyo., 680 P.2d 78, 79 (1984).

Faye's only evidence of the alleged fraud perpetrated upon her by Harry was that, upon sale, the stock yielded less than the amount listed in the agreement. The trial court found that this evidence failed to satisfy Faye's burden of proof in establish-

ing a fraud in representing the value of the warehouse shelter stock. As such the court declined to grant the requested relief. We are not convinced that the trial court abused its discretion or that appellant carried her burden of proving fraud or misrepresentation by clear and convincing evidence.

Evidence elicited at trial ·showed that Harry's proposed distribution of assets relied upon by Faye merely *estimated* the values of various assets listed in the agreement, including the warehouse shelter stock. The evidence further showed that the estimated value of other items included in Harry's proposed distribution also proved incorrect upon sale. For example, bank stock listed on Harry's side of the agreement, originally estimated by Harry to be worth $82,000, was worthless at hearing date. Like those other items, the warehouse shelter stock was only actually valued when Faye attempted to liquidate it. This did not constitute fraud or misrepresentation in the trial court's opinion, nor does it in ours. The trial court did not abuse its discretion in denying Faye's motion for modification of the decree. There is no basis to reverse the court's holding.

The portion of the judgment ordering Harry to pay $12,000 to Faye pursuant to the agreement is reversed; the portion of the judgment denying Faye's Rule 60(b)(3) motion is affirmed.

THOMAS, J., filed a concurring and dissenting opinion.

THOMAS, Justice, concurring and dissenting.

I agree with the majority of the court that the appeal by the wife in this instance, identified as case No. 88–10, should result in affirmance of the judgment of the district court. I cannot agree with reversing the judgment in favor of the wife, identified as case No. 88–9, and I dissent from the disposition made by the majority.

The rule in Wyoming is that, when parties have entered into a separation agreement, the trial court should confirm and uphold the agreement unless it is contrary to public policy. *Lewis v. Lewis,* Wyo., 716 P.2d 347 (1986); *Mentock v. Mentock,* Wyo., 638 P.2d 156 (1981); *Pavlica v. Pavlica,* Wyo., 587 P.2d 639 (1978); *Beard v. Beard,* Wyo., 368 P.2d 953 (1962). If, in the view of the district court, a property settlement agreement meets the statutory duty imposed upon a court of making a just and equitable division of the property, those qualities must be present as of the date the decree is entered. *Beckle v. Beckle,* Wyo., 452 P.2d 205 (1969). It is logical then to analyze the intent of the parties on the date of the decree because it is at that point in time that the property settlement agreement must satisfy the statutory duty imposed upon the court. The trial court did so in this instance and concluded that the parties intended the wife was to receive $41,000 out of particular listed assets. The trial court ruled that she had been paid only $29,000 of the $41,000 and that she was entitled to the balance of $12,000. Apparently, the trial court understood that she had received some $17,000 out of these assets prior to the incorporation of the property settlement agreement in the decree.

The majority asserts that awarding her the $12,000 would require invasion of other funds in the marital estate. I do not understand that reasoning because, even after the $17,000 that she received was deducted, the listed assets still had a value of $58,000. Consequently, there was more than enough money in the value of those listed assets to pay her the $41,000, which the trial court held was consistent with the intent of the parties.

I am satisfied that the majority has erred in refusing to affirm the judgment in favor of the wife. I believe the trial court was correct, and I would affirm that judgment.