2008 WY 131

James P. WUNSCH, Appellant (Plaintiff),

v.

Kelly M. PICKERING, f/k/a Kelly M. Wunsch, Appellee (Defendant).

No. S–07–0039.

Supreme Court of Wyoming.

Nov. 10, 2008.

Representing Appellant: Colin M. Simpson of Simpson, Kepler & Edwards, LLC, the Cody, Wyoming division of Burg Simpson Eldredge Hersh and Jardine, P.C., Cody, Wyoming.

Representing Appellee: Lea Kuvinka of Kuvinka & Kuvinka, P.C., Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶1] In their divorce proceedings, James and Kelly Wunsch,[1] joint owners and operators of a financial services business, executed a property settlement agreement (agreement), later fully incorporated into their divorce decree, that included a provision that they would share equally fees earned on joint client accounts, and that if Mr. Wunsch replaced any such account, then they would share equally fees on the replaced account "until such time as KELLY has received in fees an amount equal to *two times the annual earnings on the amount replaced,* based on the fee charged before the replacement." (Emphasis added). Two years later, they disagreed whether the highlighted language meant two times *the* or *her* annual earnings.

After a hearing, the district court ruled the unambiguous language meant two times *the* annual earnings. Mr. Wunsch appeals. We affirm.

## ISSUES

[¶2] Mr. Wunsch presents three issues. First, he asserts the district court erroneously denied his motion for a continuance of the hearing on the meaning of the agreement because the parties had not mediated the issue as required by the agreement. Second, he asserts the district court erroneously ruled the agreement was unambiguous and the parties intended Mrs. Wunsch to receive two times the annual earnings on the amounts replaced. Third, he asserts the issue of the agreement's meaning should be remanded for a new hearing if this Court determines that it is ambiguous.

[¶3] Mrs. Wunsch restates the issues. First, she asks whether the district court abused its discretion when it denied Mr. Wunsch's motion for a continuance. Second, she asks whether the district court erred in ruling that the agreement is unambiguous. Third, she asks, if this Court determines that the district court's ruling was erroneous as a matter of law, whether the record supports findings in her favor or whether this Court should remand for findings from the record without a rehearing.

## GENERAL BACKGROUND FACTS

[¶4] At the time of their divorce after eighteen years of marriage, the parties jointly owned personal, real, and business property. The business property was Wunsch Financial Services, Inc. (Wunsch Financial), which provided life, health, and disability insurance products and investment services such as fixed annuities, variable annuities, mutual funds, stocks, and bonds. A substantial portion of Wunsch Financial's business income came from management fees from Strategic Asset Management accounts (SAM accounts) through Linsco Private Ledger (LPL), a broker dealer. LPL permitted Wunsch Financial to conduct a broad range

---

1. After the divorce, Mrs. Wunsch remarried and her surname is now Pickering. For purposes of this opinion, the Court will refer to her as Mrs. Wunsch.

of investment services for its clients. A SAM account allowed a client to place money in many different types of investments, unlike a mutual fund. Although the up-front management fee to Wunsch Financial was less with a SAM account, management of such an account over time provided a long term income stream to Wunsch Financial. Wunsch Financial received its management fees through three accounts: a joint representative number (LPL rep number 7*7*), Mr. Wunsch's individual representative number (LPL rep number J*K*), and Mrs. Wunsch's individual representative number (LPL rep number J*J*).

[¶ 5]  At the time of their divorce, the parties engaged in extended negotiations to achieve a settlement of the various issues that typically arise in a divorce action. The parties memorialized their resolution of those issues in their child custody and property settlement agreement which the district court later approved and incorporated by reference into a divorce decree. The agreement comprises thirty pages, including exhibits, with thirty-one sections. Sections 1 through 18 treat non-property and non-business matters which are not pertinent to this appeal. Section 19 treats the division of the parties' personal property, identifying which party receives which item of personal property. Section 20 treats the parties' real property, providing for the sale and equal division of the net sale proceeds. Section 21 treats the parties' credit card debt and an LPL SAM account funded with assets provided by Mr. Wunsch's father, providing that each party is responsible for his or her own credit card debt, and the parties shall equally repay the funds provided by Mr. Wunsch's father. Section 24 through 31 treat other matters which are not pertinent to this appeal. Section 22 treats the division of the Wunsch Financial business and business assets, including joint client accounts and LPL SAM accounts. In entirety, with emphasis added, it reads:

**22. DIVISION OF THE BUSINESS AND BUSINESS ASSETS.** The parties currently co-own a business known as Wunsch Financial Services, Inc., also known as Wunsch Financial Services in Wilson, Wyoming. Each party shall pay one-half of the lease obligations on the former triple net lease. Each party is equally responsible for paying employee expenses incurred up to and including June 15, 2004. The parties shall be equally responsible for business related expenses, taxes and penalties, as well as business debts to third party creditors through June 15, 2004.

As of June 15, 2004, the business will be separated into two entities. JIM will retain the name Wunsch Financial Services, Inc. and be entitled to the Marketing Entity. KELLY will be entitled to the Asset Management and Administration Entity, which will be immediately renamed by her. KELLY shall transfer her stock to JIM and take any necessary action to conform the corporate records with this agreement.

The parties agree that they shall cooperate in this division. The funds in the corporate account shall be divided equally between the parties as of June 15, 2004.

**A. JOINT CLIENT ACCOUNTS AND SAM ACCOUNTS:** The parties will share equally any fees earned on joint client accounts paid through LPL rep number 7[*]7[*] which shall continue to be held by both parties or any mutually agreeable replacement LPL rep number. *If JIM replaces any of the above joint client accounts, JIM and KELLY will share equally the fees on the replaced account and fee sharing shall continue to be paid through LPL rep number 7[*]7[*], or any mutually agreeable replacement LPL rep number until such time as KELLY has received in fees an amount equal to two times the annual earnings on the amount replaced, based on the fee charged before the replacement.* At such time, KELLY shall no longer receive any fees on the replaced account. KELLY will not provide any services to these replaced accounts after the date of the replacement.

If the replacement product is direct business, JIM AND KELLY will share commissions using their individual LPL rep numbers after confirmation by the direct business companies involved and LPL that commissions can be received directly through these rep numbers. The commis-

sion split will be based upon the formula used for replacement of joint fee based client accounts as set forth above.

The parties acknowledge that all SAM accounts as of June 15, 2004 are joint.

As long as the parties have joint client accounts, the parties acknowledge that they must both rely on the other to perform duties and have responsibilities for the performance of those duties to the other. The duties are as follows:

KELLY, through the Asset Management entity will provide ongoing investment research, monitor the joint client accounts investment portfolios, periodically rebalance the portfolios on a regular basis, if needed, and make the necessary trades on each joint client account. KELLY and her employee may continue to have a presence on the LPL/Wunsch Financial Website. No marketing will be done by KELLY or her employee on these joint client account owners and if the account owner mentions the need for a product or service, JIM will be immediately notified.

JIM, through the marketing entity will continue to offer value added services that aid in joint client retention, continue to make the necessary client contacts by phone, by the LPL/Wunsch Financial Services web site or by e-mail and to hold periodic interviews as needed or requested by the joint client accounts. Both parties will make themselves readily accessible to the other party and promptly and accurately process any paperwork needed in the functioning of the business. Both parties will be pleasant in all conversations and communications with the other party.

**B. LPL ACCOUNTS:** After June 15, 2004, KELLY shall have all rights to the income paid through LPL representative account number J[*]J[*] and JIM shall have all rights to the income paid through LPL representative account number J[*]K[*]. JIM'S income will be paid to his individual checking account and KELLY'S income will be paid to her individual checking account. Any applications processed and commissions or fees earned after June 15, 2004 will be made through their indi-

vidual LPL rep numbers and be paid to them as individuals.

**C. NEW CLIENTS:** If JIM uses KELLY'S services for any new clients acquired after June 15, 2004, it will be by a separate written agreement negotiated and signed by the parties at that time.

**D. PENSION PLAN:** The Wunsch Financial Services pension plan will be terminated as soon as possible after the signing of this Agreement in accordance with the recommendations of the plan administrator. The parties shall pay equally the amount necessary to fully fund the plan through March 31, 2004, which is the day which the benefits were frozen, and for administration expenses and filing fees necessary to terminate the plan, as well as any late fees and penalties due. These payments shall be made at a mutually agreeable date, but no later than the closing of the first piece of real estate to sell or May 31, 2005, whichever is sooner. The parties shall equalize their distribution of pension funds by Qualified Domestic Relations Order. Any funds payable to the parties shall be divided equally after any payments to third party employees and subject to the payment to Jim Wunsch, Sr. set forth in Section 21 hereof.

**E. FURNITURE, FIXTURES AND EQUIPMENT:** The furniture, fixtures and equipment and related payments, if any, owned by Wunsch Financial Services shall be divided as designated on Exhibit C attached hereto and incorporated herein by this reference.

**F. DEMAND NOTE AND BUSINESS INCOME:** The demand Promissory Note due by the parties to the corporation, reduced by the payment to the pension plan and the credit card and personal debt assumed by the parties herein, in the approximate net amount of $168,000, but as finally determined by George Jackson, CPA as of June 15, 2004, shall be paid equally by the parties. Payment shall be by bonus for corporate income from October 1, 2003 to June 15, 2004 as illustrated by Exhibit D attached hereto at a date mutually agreed to by the parties, but no

later than the closing of the first piece of real estate to sell.

The payment of such bonus shall generate income taxes to each party, and be subject to deductions for social security, medicare, etc. Each party shall be solely responsible for payment of their individual income taxes, penalties and interest and shall indemnify the other party for any amounts the other party may be forced to pay on that person's income taxes, if any. KELLY shall reimburse the corporation for the employer's share of Social Security, Unemployment and Medicare taxes withheld from her bonus check within thirty (30) days after the payment of the bonus. All other payments made by the corporation to KELLY shall be reported as 1099 payments.

Until KELLY receives her bonus payable upon the payment of the Demand Note, KELLY shall remain a director of the corporation.

**G. CLIENT INFORMATION AND ASSET MANAGEMENT AND ADMINISTRATION INFORMATION:** KELLY acknowledges that the client information has marketable value to JIM and his business and as such cannot be released to third parties without the express written consent of JIM. JIM acknowledges that the asset management and administration information has marketable value to KELLY. As such, JIM may only use this information for marketing seminars and client interviews. At no time can the original work product or any copies of it be released to third parties without the express written permission of KELLY.

**H. CLIENT FILES AND ARCHIVES:** All client files whether they are joint client files, direct business files, insurance files, master files, closed files or any other type of client file will remain in JIM'S possession and will be available to be scanned by KELLY upon request. For accounting purposes, corporate and personal archives will remain in any office occupied by JIM. Upon the request of KELLY, the information will be made available to KELLY. The parties will cooperate in the necessary exchanges of information.

**I. CLAIMS AND CAUSES OF ACTION:** Any actions, claims, suits, proceedings or investigations, known or not known, direct or indirect, pending or not pending at the time of signing of this Agreement as a result of business transacted before the division of the business, or while the parties continue to do business together, will be equally defended by both parties. The parties will make themselves available to address and resolve any actions, claims, suits, proceedings or investigations and shall share equally the costs of any legal representation to defend against any actions, claims, suits, proceedings or investigations, any claims paid and any deductibles payable on the errors and omissions insurance policies.

**J. DISPUTES:** JIM and KELLY agree that if a dispute arises regarding the arrangements made herein that they cannot resolve themselves, either party may request mediation by written notice and they shall mediate any dispute with the assistance of a mediator in a timely manner. The parties shall be responsible for their own mediation costs and shall share equally in the cost of the mediator. No court action may be initiated without mediation taking place first. In the event that any court action is initiated to determine or enforce the rights of a party hereunder, the prevailing party shall be entitled reasonable attorney's fees and costs in addition to any other relief the court deems appropriate. Venue for all court actions shall be in Teton County, Wyoming as long as one party resides there or unless otherwise agreed to by both parties in writing.

### DISCUSSION

*Denial of Motion for Continuance*

[¶ 6] In order to place this issue in context, we must first recount the history of the district court proceedings. On August 12, 2004, the parties executed and filed the agreement. On September 17, 2004, the district court filed the parties' divorce decree which approved and fully incorporated the agreement. Seventeen months later, on

February 13, 2006, Mr. Wunsch filed his petition for modification of several provisions of the agreement and his petition for a show cause order alleging Mrs. Wunsch's violations of several provisions of the agreement. Mrs. Wunsch filed her response to Mr. Wunsch's petition on March 9, 2006. On March 20, 2006, Mr. Wunsch filed his reply to Mrs. Wunsch's response. By order filed on April 24, 2006, the district court set a hearing on Mr. Wunsch's petitions for May 30, 2006.

[¶ 7]   On May 12, 2006, Mrs. Wunsch filed her cross-petition for modification of several provisions of the agreement and for a show cause order alleging Mr. Wunsch's violation of several provisions of the agreement Among other allegations, she alleged that Mr. Wunsch had violated the provisions of Section 22.A of the agreement by failing to pay her share of commissions on replacement products and to act in good faith to ensure that the revenues to which she was entitled were delivered as the agreement required. By order filed May 15, 2006, the district court set Mrs. Wunsch's cross-petition to be heard concurrently with other pending motions on October 11, 2006.

[¶ 8]   On September 11, 2006, Mr. Wunsch filed his response to Mrs. Wunsch's cross-petition which had been filed on May 12, 2006. Among other matters, he asserted that the agreement required mediation of Mrs. Wunsch's Section 22.A issues before the initiation of court action, that she had not requested mediation, and the district court must dismiss her cross-petition in that regard. On September 13, 2006, the parties with counsel met with the mediator to mediate the disputed issues raised in the various pleadings.

[¶ 9]   Before the parties' mediation agreement was filed on October 3, 2006, Mr. Wunsch filed on September 25, 2006, his supplemental response to Mrs. Wunsch's May 12, 2006, cross-petition.   In Mr. Wunsch's supplemental response, he stated, among other matters, that the parties had mediated most issues on September 13, 2006, but not the Section 22.A issue; that if the district court treated that issue as properly raised, then he asserted Section 22.A was unambiguous and contrary to Mrs. Wunsch's

interpretation;  that, alternatively, Section 22.A was ambiguous;  that, alternatively, Section 22.A was the result of mutual mistake and should be reformed to reflect the parties' actual objective intent;  and that the district court must hold a hearing and grant just and proper relief.

[¶ 10]   On September 28, 2006, Mrs. Wunsch filed her response to Mr. Wunsch's September 11, 2006, motion to dismiss, which had asserted that Mrs. Wunsch had failed to demand mediation.   In her response, Mrs. Wunsch asserted that Mr. Wunsch had agreed to attend mediation;  the parties engaged in mediation on September 13, 2006, which resulted in settlement on a number of issues;  and that she had properly raised at the mediation the issue of Section 22.A's interpretation, although resolution was not reached.

[¶ 11]   On October 3, 2006, the mediation agreement was filed.   Paragraph three of the mediation agreement reads:

3.   *[Mrs. Wunsch's] Claims Concerning Section 22.A. Payments.*   There remains a dispute between the Parties regarding the calculation of the amount [Mrs. Wunsch] claims [is] owed to her by [Mr. Wunsch] with respect to replaced joint client accounts pursuant to Section 22.A. of the Settlement Agreement.   Until such time as the Parties otherwise agree in writing or the Court rules on this issue, the parties agree that the fee due to [Mrs. Wunsch] for each joint client account replaced will be an amount equal to two times the annual earnings of [Mrs. Wunsch] for each joint client account replaced and the annual earnings shall be based on the fee earned by [Mrs. Wunsch] on such account before the replacement until [Mrs. Wunsch] is paid in full.   Said calculation constitutes a temporary compromise by [Mrs. Wunsch] for purposes of settlement until the parties otherwise agree in writing or the Court rules on this issue.   The parties agree that such payments shall be administered in accordance with the provisions of Section 4 until further written agreement of the Parties or order of the Court.   The Parties have the right to present arguments and evidence to

the Court with respect to his or her interpretation of the Separation Agreement and Section 22.A. of the Settlement Agreement with respect to how the payments are to be made and calculated.

[¶ 12] Three days later, on October 6, 2006, Mr. Wunsch filed his motion for continuance of the hearing set for October 11, 2006. In pertinent part, he (1) asserted that he "had not been anticipating trying the Section 22.A. issues" at the scheduled hearing; (2) requested "additional time and opportunity to properly prepare his case for presentation to this court;" and (3) referenced language in paragraph three of the parties' mediation agreement that they have the right to present arguments and evidence to the Court with respect to the "interpretation of the Separation Agreement and Section 22.A. of the Separation Agreement with respect to how the payments are to be made and calculated." On October 9, 2006, the district court set Mr. Wunsch's motion for continuance for hearing on the next day, October 10.

[¶ 13] Also on October 9, 2006, Mrs. Wunsch filed her objection to Mr. Wunsch's motion for continuance. In pertinent part, she asserted (1) five months earlier the district court had set October 11, 2006, as the date for hearing all matters raised in Mr. Wunsch's modification petition and Mrs. Wunsch's cross-petition so the parties had five months to pursue discovery and prepare for the hearing; (2) the parties agreed to mediate the outstanding issues on September 13, 2006, and take depositions September 14 and 15, 2006; on September 13, 2006, Mr. Wunsch's counsel told Mrs. Wunsch's counsel that he had to postpone taking Mrs. Wunsch's deposition on September 15, 2006, but would take it on a later date; but Mr. Wunsch's counsel did not try to depose Mrs. Wunsch before filing his motion for continuance; and had Mr. Wunsch's counsel pursued discovery, including Mrs. Wunsch's deposition, in the five months before the October 11 hearing, he could have been prepared for the hearing; (3) at the parties' mediation on September 13, 2006, they discussed the issue of the Section 22.A interpretation and "quickly realized at the mediation that mediation of their dispute ... was futile" and, at the mediator's suggestion, "the parties carved that issue out of the mediation and set it aside for the Court's resolution;" and (4) a continuance was unwarranted because both counsel maintained in their respective pleadings that Section 22.A was unambiguous and the Court would interpret the language according to its plain meaning; and the single issue is ripe for resolution.

[¶ 14] On October 10, 2006, the district court heard argument on and denied Mr. Wunsch's motion for continuance and no record of this hearing was made. The next day, on October 11, 2006, the district court conducted the hearing, which included taking evidence and hearing counsel's arguments, on the issue of the Section 22.A interpretation. Seventy days later, on December 20, 2006, the district court filed its decision order, paragraph 4 of which reads:

Each provision in the contract deals very specifically with the parties' assets and Section 22.A is no exception. Section 22.A reads as follows:

"... until such time as Kelly has received in fees in *an amount equal to two times the annual earnings ...* "

The provision is clear. The provision is unambiguous. The contract should be enforced according to its terms

The district court then ordered that Mrs. Wunsch "is to receive two times the annual earnings on any amounts replaced from the Sam accounts."

[¶ 15] Mr. Wunsch's first issue is a threshold matter because if he was entitled to more time and opportunity to prepare for the October 11, 2006, hearing, then it might be necessary to reverse the district court's dispositive order. Rule 201 of the Uniform Rules for District Courts of the State of Wyoming (U.R.D.C.) provides "[c]ases will not be continued upon stipulation of counsel. Continuances will be granted only for good cause shown in writing." *See also* Wyo. Stat. Ann. § 1–9–102 (LexisNexis 2007) ("Any court, for good cause shown[,] may continue any action at any stage of the proceedings at the cost of the applicant, to be paid as the court shall direct."). In *Dunsmore v. Dunsmore*, 2007 WY 202, ¶ 24, 173 P.3d 389, 393–

94 (Wyo.2007), we reiterated the long-standing rule:

> The trial court has broad discretion in granting or denying a motion for continuance, and absent a manifest abuse of discretion, the reviewing court will not disturb such a ruling. To find an abuse of discretion, the refusal must be so arbitrary as to deny appellant due process, and the burden rests upon appellant to prove actual prejudice and a violation of his rights. Upon review, we look at the peculiar circumstances of the case and the reasons presented to the trial judge at the time of the request.

(quoting *Richard v. Richard,* 2007 WY 180, ¶ 6, 170 P.3d 612, 614 (Wyo.2007)). Although Mr. Wunsch has not provided us with a record of the October 10, 2006, hearing at which his motion for continuance was heard, we have reviewed the record of the proceedings which preceded that hearing, and that record affords us a look at the peculiar circumstances of the case and the written reasons for and against the motion presented by both counsel at the time of the hearing. Doubtless the district court conscientiously considered those circumstances and the parties' respective reasons for and against the motion. We cannot say that the district court's aligning with Mrs. Wunsch's reasons against the motion was "so arbitrary as to deny" Mr. Wunsch due process. We have also read the transcript of the October 11, 2006, hearing at which the issue of Section 22.A's interpretation was contested and are certain that Mr. Wunsch's counsel fully, capably, and zealously presented Mr. Wunsch's position on that issue. We hold that the district court did not abuse its discretion in denying the motion for continuance.

### Interpretation of Section 22.A of the Agreement

[¶ 16]   This Court applies the standards of contract construction to construe divorce property settlement agreements. *Lipps v. Loyd,* 967 P.2d 558, 560 (Wyo.1998); *Brockway v. Brockway* 921 P.2d 1104, 1106 (Wyo.1996); *Crawford v. Crawford,* 757 P.2d 563, 566 (Wyo.1988). Our cases are legion in which we recite and apply these standards. The parties here agree what those standards are. The parties here also agree that the agreement, including Section 22.A, is unambiguous; that is, it is capable of being understood in only one way with respect to the amount of fees Mrs. Wunsch is to receive on the joint client accounts replaced by Mr. Wunsch. The parties disagree, however, about that understanding; specifically, they disagree about the meaning of the agreement, including Section 22.A, with respect to that amount of fees. The district court decided that the agreement, including Section 22.A, is capable of being understood in only one way, namely, Mrs. Wunsch is to receive in fees an amount equal to two times the annual earnings on the amount replaced. This Court does not accord deference to that decision. *Examination Management Services v. Kirschbaum,* 927 P.2d 686, 689 (Wyo. 1996). Whether the contract is unambiguous is a question of law; if the Court determines the contract is unambiguous, the next question, what is the contract's meaning, is also a question of law. *Id.* This Court is "at liberty to make a determination as to the existence of ambiguity whether or not the parties here agree thereto one way or the other; and whether or not the trial court has reached a conclusion thereon one way or the other." *Id.* (quoting *Amoco Prod. Co. v. Stauffer Chem. Co. of Wyoming,* 612 P.2d 463, 465 (Wyo.1980)).

[¶ 17]   This Court's standards of contract construction include:

> — in reading a contract our primary purpose is to determine the true intent and understanding of the parties at the time and place the contract was made;
>
> — we consider the contract as a whole, reading each part in light of all other parts; meaning should be afforded to all of the language used by the parties if that can be done and a reasonable construction achieved; in other words, we analyze "the tenor" of the contract;
>
> — the presumption is that a particular provision is placed in a contract for a purpose; therefore, we strive to avoid a construction which renders a provision meaningless. Similarly, we strive to reconcile by reasonable interpretation any provisions which apparently conflict before

adopting a construction which would nullify any provision;

— if we identify an ambiguous term or portion of the contract, we strive to ascertain the meaning of that term or portion from other language of the contract, *i.e.*, from the contract as a whole;

— common sense and good faith are the leading characteristics of contract construction;

— we determine the parties' intent by an objective approach, *i.e.*, intention is what a reasonable person in the position of the parties would conclude the manifestations to mean.

In addition to these standards we have also recognized that:

> The language of a contract is to be construed within *the context* in which it was written. In so doing, the court may look to the surrounding circumstances, the subject matter and the purpose of the contract. The purpose of examining *the context* within which the contract was drawn, however, is limited to ascertaining the intent of the parties at the time the agreement was made. *The context* cannot be invoked to contradict the clear meaning of the language used, and those extraneous circumstances do not justify a court in proceeding "to insert therein a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties."

*Examination Management Services, Inc.*, 927 P.2d at 690 (citations omitted). With these standards in mind, we now consider the parties' contentions.

[¶ 18] Mr. Wunsch contends the unambiguous meaning of Section 22.A is that Mrs. Wunsch should receive twice her annual income from the SAM accounts as compensation for her interest in the parties' business. He claims the parties agreed on a fifty-fifty split of the business and that this split is evidenced by language not only in Section 22.A of the agreement, but also in language in other Section 22 provisions, namely, four statements in the introductory part of Section 22, a statement in Section 22.B, three statements in Section 22.D, a statement in Section 22.F, a statement in Section 22.I, and a statement in Section 22.J. In the introductory part of Section 22, he points to the statements that they co-own a business; each party shall pay one-half the former triple net lease obligations; each party is equally responsible for paying employee expenses incurred through June 15, 2004, the date the business will be separated into two entities; and the parties shall be equally responsible for business related expenses, taxes and penalties, and business debts to third party creditors through June 15, 2004. In Section 22.B, he points to the statement that each party has all rights to the income paid through that party's own LPL representative account number. In Section 22.D, Pension Plan, he points to the statements that the parties shall equally pay the amount necessary to fully fund the plan through March 31, 2004, the date benefits were frozen; the parties shall equalize their distribution of pension funds by qualified domestic relations order; and after any payments to third party employees, the parties shall equally divide any funds payable to them. In Section 22.F, he points to the statement that the parties shall equally pay the demand promissory note to the corporation. In Section 22.I, he points to the statement that the parties shall equally defend any claims arising from the business transacted before the division of the business or while the parties continue to do business together. Finally, in Section 22.J, he points to the statement that the parties shall share equally the mediator's cost if there is dispute mediation.

[¶ 19] With respect to the language in Section 22.A, Mr. Wunsch contends that the fifty-fifty split of the business is evident in the first sentence that states the parties will share equally any fees earned on joint client accounts paid through the parties' joint account LPL representative number 7*7*, and in the second sentence that states the parties will share equally the fees on any replaced joint client account paid through their joint account LPL representative number 7*7* until Mrs. Wunsch has received in fees "an amount equal to two times the annual earnings on the amount replaced."

[¶ 20] Considering the "equal division" language in the statements in the introductory part of Section 22, Section 22.B, Section 22.D, Section 22.F, Section 22.I, and Section 22.J, Mr. Wunsch concludes that the only reasonable meaning to the language in Section 22.A is an equal division of their assets, resulting in payment for Mrs. Wunsch's fifty percent interest in those replaced joint client accounts, not twice the entire annual earnings received on such accounts.

[¶ 21] Countering Mr. Wunsch's position on the unambiguous meaning of Section 22.A, Mrs. Wunsch asserts that Mr. Wunsch's reliance on the few irrelevant statements in Section 22's other provisions is an attempt to impose his interpretation of an "industry standard" for appraising the value of a business while ignoring Section 22.A's plain language that addresses the parties' settlement on the replaced joint accounts. She points out that Section 22.A is the only provision in the agreement setting forth the amount she was to be paid if Mr. Wunsch decided to replace a joint client account. She asserts that Section 22.A is plain and clear that if he replaced a joint client account, she was to receive "two times the annual earnings on the amount replaced." She states that the parties could have used the word "her" in place of the word "the" in the sentence in question; but they did not. She argues that Mr. Wunsch would replace the word "the" with the word "her;" but that would be rewriting the agreement, which courts may not do.

[¶ 22] Mrs. Wunsch asserts that in the agreement the parties specifically stated how each item of property would be divided, sold, or otherwise disposed of. She notes that the agreement treats separately the disposition of each particular asset. In particular, she argues, Section 22.A treats the replaced joint client accounts. She notes that the agreement expresses no general rule that there was to be a fifty-fifty division of the assets, as Mr. Wunsch argues. She asserts that the plain meaning of the specific language in Section 22.A may not be trumped by Mr. Wunsch's "non-existent assumption" of a fifty-fifty split.

[¶ 23] We have carefully considered the parties' arguments in light of our standards of contract construction. When we apply these standards to the agreement dispute at hand, we conclude that Mrs. Wunsch's position is more persuasive. We hold that the language of the agreement is unambiguous in stating that if Mr. Wunsch replaced any of the joint client accounts, the parties will share equally the fees on the replaced accounts "until such time as [Mrs. Wunsch] has received in fees an amount equal to two times *the* annual earnings on the amount replaced." (Emphasis added). The agreement does not mean two times *her* annual earnings. We reject Mr. Wunsch's construction of the agreement because it defies the plain meaning of the agreement and would rewrite a critical word in the key sentence of Section 22.A.

[¶ 24] We affirm the decision of the district court.