2009 WY 141

**Richard E. ASHERMAN, Appellant (Plaintiff),**

v.

**Robyn R. ASHERMAN, Appellee (Defendant).**

No. S–09–0050.

Supreme Court of Wyoming.

Nov. 17, 2009.

Representing Appellant: Michael A. La-Bazzo of Law Offices of Michael A. LaBazzo, LLC, Cody, Wyoming.

Representing Appellee: Jill Deann LaRance of LaRance & Syth, P.C., Billings, Montana.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] In 2007, the district court entered a divorce decree, incorporating the parties' Child Custody and Property Settlement Agreement. Later, Robyn Asherman (Wife) filed a motion asking the court to have funds from the sale of a property disbursed in accordance with the agreement. Specifically, she stated that three debts, including the remaining balance on a $155,000 debt on her residence, were to be paid from the proceeds of the sale, after which any remaining funds were to be split equally between the parties. Richard Asherman (Husband) countered that the settlement agreement required that the debt on Wife's residence be paid solely out of her share of the sale proceeds. The district court agreed with Wife and entered an order in her favor. Husband appeals, claiming the district court erred in interpreting the settlement agreement.

[¶ 2] We affirm.

## ISSUE

[¶ 3] Husband presents the following issue, phrased as a statement, on appeal:

The decision of the trial court that the settlement agreement was clear and unambiguous and should be interpreted as asserted by Appellee was an error of law.

Wife restates the issue as:

Was the trial court correct in concluding that the Child Custody and Property Settlement Agreement, dated July 3, 2007, and incorporated in the July 7, 2007 Divorce Decree, clearly and unambiguously set forth the manner in which the parties were to divide the proceeds from the sale of their Logan Mountain property?

## FACTS

[¶ 4] In resolving the issues in their divorce proceedings, Husband and Wife executed the settlement agreement. When they entered into the agreement, they owned real property including: the Logan Mountain property, which the parties had placed for sale; the Chugwater Drive property, Husband's residence; and the Alpine Avenue property, Wife's residence. Husband had borrowed $155,000 to allow Wife to purchase the Alpine Avenue residence. The relevant provisions of the settlement agreement set over the Chugwater Drive property to Husband and the Alpine Avenue property to Wife. With regard to the Logan Mountain property, they agreed:

The Logan Mountain property has been listed for sale ... at a price of $699,500.00 and the parties agree to sell the property at a reasonable price mutually agreed upon. Following payments of debt as provided herein, each party is entitled to one-half of remaining net proceeds.

[¶ 5] Under the "Debts" heading in Paragraph 22 of the settlement agreement, the parties agreed:

A. [Husband] agrees to assume and hereby agrees to pay the following indebtedness and any indebtedness he has incurred since the parties' separation and he further agrees to save and hold [Wife] harmless from any of said debts and to indemnify her against any sums which she may be required to pay by any such creditors:

1. [Husband's] residence located at ... Chugwater Dr.

2. Any loans and lines of credit in his name ..., including any loans on the Logan Mountain Property, subject to the provisions herein.

B. [Wife] agrees to assume and hereby agrees to pay the following indebtedness and any indebtedness she has incurred since the parties' separation and she further agrees to save and hold [Husband] harmless from any of said debts and to indemnify him against any sums which he may be required to pay by any such creditors:

1. All indebtedness on her residence located at ... Alpine [Avenue] ... other than the $155,000 [Husband] borrowed to allow [Wife] to purchase the residence.

C. **Debt Repayment**—The Logan Mountain property has been listed for sale ... at a price of $699,500.00 and the

parties agree to sell the property at a reasonable price mutually agreed upon. [Husband] has provided financing to [Wife] in the total amount of $155,000 to allow her to purchase the residence she now owns at ... Alpine in Cody. From the proceeds of a sale of either a portion of or all of Logan Mountain and/or [another property] the parties agree to pay the following debts:

1. The mortgage on Logan Mountain as of separation ... ;
2. The amount that was remaining on [a line of credit];
3. The balance due on the $155,000 that [Husband] borrowed for [Wife] to allow her to purchase her residence.

Only after the three debts as set forth in this paragraph are paid, any remaining net proceeds from the sale of Logan Mountain and/or [another property], will be split equally between [Husband] and [Wife]. Out of [Wife's] share [Husband] will be immediately reimbursed for all payments he has paid on the $155,000 borrowed for [Wife's] house, including principal and interest.

If [Wife] decides to sell her residence located at ... Alpine ... prior to the $155,000.00 being paid in full, the proceeds from the sale of [Wife's] residence will b[e] used to pay the remaining owed on the $155,000.00.

[¶ 6]   When the Logan Mountain property sold, the parties disagreed over how the proceeds should be distributed.   Wife argued that the balance due on the $155,000 debt on her Alpine Avenue residence, together with the other debts listed in Paragraph 22C, should be paid from the sale proceeds and then the remainder should be divided equally between the parties.   Husband maintained that the debt on the Alpine Avenue property should be paid solely from Wife's share of the sale proceeds.

[¶ 7]   The district court agreed with Wife. It declared that the settlement agreement was clear and unambiguously required the Alpine Avenue debt to be paid from the joint sale proceeds prior to splitting the remainder between the parties, rather than solely from Wife's share.   Husband appealed.

## DISCUSSION

[¶ 8]   In order to resolve this case, we must interpret the settlement agreement incorporated into the divorce decree.   This Court applies our standard contract interpretation principles to construe divorce property settlement agreements.   *Wunsch v. Pickering*, 2008 WY 131, ¶ 16, 195 P.3d 1032, 1039 (Wyo.2008);   *Lipps v. Loyd*, 967 P.2d 558, 560–61 (Wyo.1998).   Our basic purpose is to discern the intention of the parties.   We start with the determination of whether the contractual language is clear or ambiguous. That determination is a question of law and, accordingly, we do not defer to the district court's decision.   *Id.   See also*, *Examination Mgmt. Servs. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo.1996).   "An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.'" *Brockway v. Brockway*, 921 P.2d 1104, 1106 (Wyo.1996), quoting *Amoco Prod. Co. v. Stauffer Chem. Co.*, 612 P.2d 463, 465 (Wyo. 1980).   However, a contract is not rendered ambiguous simply because the parties do not agree on the proper interpretation of its terms.   *Brockway*, 921 P.2d at 1107.   If the writing is clear and unambiguous, we determine the parties' intention from the words of the contract as a matter of law.   The contract is considered as a whole, reading each part in light of all other parts.   *Brockway*, 921 P.2d at 1106.

[¶ 9]   Several provisions of the settlement agreement address payment of the $155,000 debt resulting from the purchase of the Alpine Avenue property.   Paragraph 22C provided that three debts would be paid from the sale of the Logan Mountain property: 1) the mortgage on Logan Mountain as of separation; 2) the amount that was remaining on a line of credit; and 3) the "balance due on the $155,000 that [Husband] borrowed for [Wife] to allow her to purchase her residence."   That paragraph continued: "Only after the three debts as set forth in this paragraph are paid, any remaining net proceeds from the sale of Logan Mountain and/or [another property], will be split equal-

ly between [Husband] and [Wife]." Other provisions provided that "[f]ollowing payments of debt as provided herein, each party is entitled to one-half of remaining net proceeds" and Wife agreed to pay "all indebtedness on her residence located at ... Alpine ... other than the $155,000 [Husband] borrowed to allow [Wife] to purchase the residence." These provisions very clearly establish that the Alpine Avenue debt was to be paid out of the proceeds from the sale of the Logan Mountain property before the remainder was split equally between the parties.

[¶ 10] Nevertheless, Husband argues that the settlement agreement is ambiguous concerning how the Alpine Avenue debt was to be repaid. He argues that the overall intent of the agreement was to divide the parties' assets "according to their origin and the relative contributions" by the parties. Husband maintains that the correct interpretation of the settlement agreement is that Wife was required to reimburse him for the $155,000 loan out of her share of the Logan Mountain proceeds rather than the debt being paid out of the joint proceeds because he used his credit, i.e., separate funds, to obtain the loan to purchase the Alpine Avenue property.

[¶ 11] We have recognized in other divorce cases that, when the parties execute a detailed property settlement agreement, we will enforce the plain language of the agreement even if an argument can be made that a particular provision of the agreement is not necessarily consistent with one of the parties' interests. For example, in *Brockway*, 921 P.2d at 1106–07, the husband argued that the provision of the property settlement agreement which stated: "[t]he [wife] shall receive one half (1/2) of the [husband's] Air Force retirement" was ambiguous. He claimed that he intended that his wife receive only one-half of the retirement he earned while they were married. We concluded that the language was not ambiguous and plainly stated that the wife was entitled to one half of his total retirement, stating "if the husband wanted to limit payment of his retirement to that earned during the marriage, he could have, and should have, said that in the property settlement agreement[.]" *Id.* at 1107.

[¶ 12] In *Wunsch*, ¶¶ 18–24, 195 P.3d at 1040–41, the parties entered into an agreement splitting their joint business interests. One of the contractual provisions stated that if husband replaced any of the joint client accounts, the parties would share equally the fees on the replaced accounts "until such time as [wife] ha[d] received in fees an amount equal to two times *the* annual earnings on the amount replaced" (emphasis added). *Id.* Arguing that the overall intent of the agreement was to split the business assets equally, husband insisted the provision meant **her** earnings, not the total earnings. We rejected his interpretation as it defied the plain language of the provision which expressly included the terminology "the earnings" rather than "her earnings." *Id.*

[¶ 13] Like in *Brockway* and *Wunsch*, we conclude the plain language of the agreement controls here. The settlement agreement in this case was very detailed, addressing the parties' assets and liabilities separately and with obvious care. Its plain language established that the Alpine Avenue debt would be paid from the Logan Mountain sale proceeds prior to the split of the remainder of the proceeds between the parties. The language was not obscure and did not present a double meaning. If Husband had wanted to require that the Alpine Avenue debt be paid out of Wife's proceeds from the sale, rather than joint proceeds, he could have, and should have, had such a provision expressly incorporated in the agreement. We will not ignore the plain meaning of the debt repayment provisions in favor of an unstated overall intent espoused by the Husband at this late date.

[¶ 14] Husband also argues the district court disregarded the part of Paragraph 22C which stated: "Out of [Wife's] share [Husband] will be immediately reimbursed for all payments he has paid on the $155,000 borrowed for [Wife's] house, including principal and interest." He states that, under this sentence, he could have paid off the loan prior to the closing on the Logan Mountain property sale and then required Wife to pay the entire amount out of her share. Husband apparently claims that an ambiguity exists in the agreement because the timing of

the payoff determined whether the debt would be paid out of joint proceeds or only out of Wife's proceeds.

[¶ 15]   We agree with Husband's interpretation of the quoted sentence from Paragraph 22C, but we fail to see how that contractual option renders ambiguous the other provisions of the agreement that required payment of the Alpine Avenue debt out of the joint proceeds of the Logan Mountain property sale. There were simply two different procedures set out in the agreement. Husband could either make arrangements to pay off the debt out of his separate funds and obtain payment from Wife out of her separate funds, or he could retain the debt, or a part of it, until the sale of the Logan Mountain property, in which case the remaining debt would be paid out of the joint proceeds of the sale. While, in hindsight, those two provisions may seem inconsistent with regard to the effect on Husband's finances, that inconsistency does not render the agreement ambiguous. Moreover, the provisions were not mutually exclusive. The record indicates that Wife reimbursed Husband, out of her share of the sale proceeds, for payments he had made on the Alpine Avenue debt prior to the Logan Mountain property sale.

[¶ 16]   In conclusion, the settlement agreement clearly stated that the outstanding balance on the $155,000 debt resulting from the purchase of Wife's Alpine Avenue property would be paid out of the joint proceeds of the sale of the Logan Mountain property.

[¶ 17]   Affirmed.